4

UNITED STATES of America

v.

Earl BUDD, aka Earline, Defendant.

Crim. No. 91–549.

United States District Court,
District of Columbia.

Feb. 23, 1993.

Lynn Leibovitz, Asst. U.S. Atty., Washington, DC, for the Government.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

The defendant, Earl Budd, was convicted by a jury on August 10, 1992, of one count of Unlawful Distribution of Cocaine Base, and two counts of Unlawful Use of a Telephone to Facilitate the Offense of Distribution of Cocaine Base.

The defendant now moves for a Judgment of Acquittal, N.O.V. and/or for a dismissal of the indictment. The basis for this motion is that the conduct of the government was so "outrageous", that it violated his constitutional rights. Essentially, the allegations, are that the investigating Police Officer had sex with him, smoked a cocaine laced marijuana cigarette with him, and passed "crack" cocaine across the bar to the bartender at the "Brass Rail", during the course of his investigation.

The Court held a post-conviction hearing to determine the validity of the defendant's allegations.

## BACKGROUND

In early 1991, an undercover narcotics operation was begun, which centered around the "Brass Rail", a bar and club located at 5th and K Streets, N.W., in the District of Columbia. The clientele of the "Brass Rail" includes cross-dressers.

The defendant is a 34 year old cross-dresser.

Captain Miller, the operations supervisor, testified that he assigned Investigator Gregory Wilson, a "mature" 13 year veteran of the Metropolitan Police Force, to the "Brass Rail" undercover operation in late 1990 or early 1991. He testified that he arranged for a special informant to introduce Wilson to the targets of the undercover operation.

Wilson began frequenting the "Brass Rail" at least a month before he was introduced to Mr. Budd. Both Miller and Wilson testified that Mr. Budd was not the primary focus of the inquiry, but believed that once Mr. Budd

supplied Wilson with drugs that he would introduce him to higher echelon drug dealers.

Budd was introduced to Wilson, by the special informant at the "Brass Rail", on March 13, 1991. At that time, Wilson told the defendant that he wanted to purchase some "crack" cocaine so that he could distribute it in another location, namely the Eastern Shore of the Chesapeake Bay. According to the trial testimony, the Defendant told Wilson that he could help him out, whereupon he left the location and returned a few moments later, with 16 bags of a white rocky substance, which he sold to Wilson for $300. These bags later tested positive for crack cocaine and had an aggregate weight of 3.219 grams. At trial the jury was unable to reach a decision as to the defendant's culpability in this transaction. However, on the date of the alleged transaction the defendant gave Wilson his telephone number to facilitate future purchases.

On March 20 and 21, 1991 Wilson phoned the defendant and arranged to purchase crack on March 21, at Budd's residence located at 715 Gresham Place, N.W. The Defendant met Wilson at his door wearing a woman's negligee, and sold him 6.59 grams of crack cocaine for $350. Captain Miller testified that Wilson was followed to Budd's home, by a fellow undercover Police Officer, who reported that Wilson spent only a short period of time in the premises.

At trial Budd testified that he began a homosexual relationship with Wilson in March, 1991. Budd testified that he and Wilson began "hugging and kissing" on March 21st, but did not become involved in a sexual affair until several days after this visit. Budd testified as follows:[1]

BY AUSA:

Q: Now, you told the jury that you saw Investigator Wilson at your place four times?

A: Yes.

Q: And on March 21 was the first time; is that your testimony?

A: The 21st? The 21st, yeah.

Q: When was the second time?

A: I can't remember the actual dates.

Q: Well can you tell us what happened.

A: They were just, you know, casual. He would call me, and said, look, I'm in town, and I'm coming up, and he would come up.

Q: Tell us how many days after the 21st that happened.

A: Twice.

Q: How many days after the 21st was the first time—the next time he called you?

A: After the 21st?

Q: Yes.

A: I can't be exact of the dates.

The Court finds defendant's testimony is too equivocal to conclude a sexual relationship in fact existed.

The statements of Captain Miller and Investigator Wilson are much more credible. Each knew the factual circumstances of Wilson's visit to Budd's home. Wilson testified that on his first visit to 715 Gresham Place, he felt very uncomfortable in the presence of the nearly naked defendant, and promptly left after making the purchase of crack cocaine. This testimony is corroborated by the fact that Wilson's backup, Wayne Stancil, saw him leave the premises only a few minutes after he had entered.

At the post-conviction hearing both Captain Miller and Wilson testified that after the March 21, 1991 meeting Wilson returned to 715 Gresham Place only once, on April 11, 1991. This meeting had been pre-arranged by Wilson, for him to purchase additional crack cocaine from the defendant. Both testified that Captain Miller was to be Wilson's backup on this day. The plan was that Wilson would call the defendant from the "Brass Rail" and arrange to come to his home to purchase the drugs. Miller would wait around the corner from the "Brass Rail", on K street, until Wilson walked past him. He would then follow him to the defendant's home. This plan, however, was interrupted by a distress call for assistance from another Police Officer, to which Captain Miller responded immediately. Wilson, who was unaware that Miller had responded to another call, proceeded to Budd's home as previously

---

1. Official Court transcript of the Criminal Trial. August 7, p. 101.

planned. No sale of drugs took place at that time. Wilson returned to the station house within an hour of the attempted transaction.

There was no further contact between Investigator Wilson and Mr. Budd, until Budd was arrested on September 5, 1991. During the debriefing, Wilson's true identity was revealed to the defendant. Captain Miller testified that Budd stated at that time, "Oh, You (Wilson) know that I loved you so much." There was no accusation that Wilson had a sexual affair with the Defendant until he testified at the trial.

### ANALYSIS

The defendant has made a motion for a Judgment of Acquittal N.O.V. or in the alternative to Dismiss the Indictment because of "Outrageous Government Conduct". A motion to Dismiss an Indictment because of Outrageous Government Conduct is usually required to be made before a trial. However, where allegations of Outrageous Government Conduct arise during the course of a trial, a Court can consider those allegations post-conviction. *See, United States v. Dyman,* 739 F.2d 762, 768–69 (2d Cir.1983). Here the gravity of the defendant's accusations, namely inappropriate conduct by the government investigator, compelled this Court to hold such a hearing.

The defendant asserts that the Investigating Police Officer exceeded the bounds of the propriety by 1) engaging in sexual relations with Budd several days after the date that Budd sold drugs to him; 2) smoking cocaine-laced marijuana on the date of the second cocaine sale to the officer; and, 3) giving crack cocaine to a bartender at the "Brass Rail".

The Supreme Court has recognized that there may be situations "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). The task for this Court, therefore, is to determine if the allegations made by the defendant are true, and if so whether such inappropriate conduct of the government agent is so egregious that the case must be dismissed.

This Court does not believe that the defendant has sustained his burden to grant a dismissal of the indictment. The Court credits the testimony of Wilson, that he did not engage in the conduct alleged by defendant. The Court finds that Wilson's testimony is in every way credible, and accurately portrayed his actions during the conduct of a very difficult assignment. Indeed with respect to the alleged incident on March 21, 1991, Wilson's actions were observed by a back-up Police Officer, who did not see what the defendant stated in his testimony.

In addition, the testimony of Captain Miller showed that Wilson carried out his duties in compliance with Metropolitan Police procedures. Since the allegations of Governmental misconduct has not been sustained the defendant's motion for a Judgment of Acquittal N.O.V. or in the alternative to dismiss the indictment is denied.

SO ORDERED.